UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ARRIAMA A. MATLOCK-ABDULLAH,

                              Plaintiff,                    6:15-CV-0294
                                                           (GTS/TWD)
v.

NEW YORK STATE DEPARTMENT OF LABOR,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

ARRIAMA A. MATLOCK-ABDULLAH
   Plaintiff, *Pro Se*
P.O. Box 76
Canajoharie, New York 13317

HON. ERIC T. SCHNEIDERMAN                   AIMEE M. PAQUETTE, ESQ.
Attorney General for the State of New York  Assistant Attorney General
   Counsel for Defendant
615 Erie Blvd. West, Suite 102
Syracuse, New York 13204

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this *pro se* employment discrimination action filed by

Arriama A. Matlock-Abdullah ("Plaintiff") against the New York State Department of Labor

("NYSDOL" or "Defendant"), is Defendant's motion for summary judgment pursuant to Fed. R.

Civ. P. 56 (Dkt. No. 55).  For the reasons set forth below, Defendant's motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Amended Complaint

Generally, liberally construed, Plaintiff's Amended Complaint alleges as follows.  (Dkt. No. 7 [Pl.'s Am. Compl.].)  Plaintiff was formerly employed as a Labor Services Representative with the NYSDOL's Workforce Solutions Career Center in Amsterdam, New York.  (*Id.*, ¶ 8.) Susan Dufel is identified in Plaintiff's Amended Complaint as the Director of Workforce Solutions.  (*Id.*, ¶ 3.)  Plaintiff alleges that Ms. Dufel (1) held her to a different work standard than that governing Plaintiff's Caucasian counterparts, (2) called Plaintiff into her office on September 16, 2013, to reprimand her because of a Caucasian co-worker's client, (3) repeatedly called Plaintiff into her office in October and November of 2013 to reprimand her for documentation issues, and (4) verbally reprimanded Plaintiff in front of her staff and counterparts on December 20, 2014.  (*Id.*, ¶ 8.)  Plaintiff further alleges that Ms. Dufel willfully involved other agency staff members and subordinates in an effort to deny and conceal acts of wrongdoing toward Plaintiff.  (*Id.* at 4.)  As a result, Plaintiff alleges, Ms. Dufel created a hostile work environment ripe for retaliation where other staff members felt comfortable displaying aggressive actions towards Plaintiff based upon her race.  (*Id.* at 3-4.)  Plaintiff alleges that the behaviors and acts committed against her caused her emotional, mental, and physical anguish, and caused her to work in an environment where she constantly felt set apart.  (*Id.* at 3.)

On January 3, 2014, Plaintiff filed an internal complaint with the NYSDOL claiming that an individual (whose name has been redacted) held her to a different standard than the standard governing other employees, changed rules in a manner that adversely impacted her, and created a hostile work environment by publicly embarrassing her, singling her out for penalties, bullying

her, and systematically targeting her for unfair treatment.  (Dkt. No. 1, Attach. 1, at 12.)

On July 11, 2014, Plaintiff filed a discrimination complaint against the NYSDOL with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that she was targeted for harassment, subjected to different terms and conditions of employment, and constructively discharged because of her race.  (Dkt. No. 7, ¶ 10 [Pl.'s Am. Compl.]; Dkt. No. 1, at 6 [EEOC Compl.]. ) Plaintiff received a right-to-sue letter from the EEOC on December 16, 2014.  (Dkt. No. 7, ¶ 11 [Pl.'s Am. Compl.].)

Based upon the foregoing allegations, Plaintiff claims that Defendant has violated 42 U.S.C. § 2000e-5, *et seq.*, by (a) subjecting her to discrimination and unequal terms and conditions of her employment on the basis of her race, (b) creating a hostile work environment, and (c) retaliating against her after she engaged in protected activity.  (*Id.* at 2.)  In addition, Plaintiff claims that she was retaliated against after engaging in speech that is protected by the First Amendment.  (*Id.*)

**B.    Statement of Undisputed Material Facts**

Before reciting the material facts of this case, the Court must address the following issue it has identified in Plaintiff's responses to Defendant's Statement of Undisputed Material Facts, made pursuant to Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.  Throughout Plaintiff's Rule 7.1 Response, she "admits" many of the facts asserted by Defendant in its Rule 7.1 Statement but then includes additional facts and/or legal argument in those responses.  (*See*, *e.g.*, Dkt. No. 70, Attach. 2, at ¶¶ 8, 10, 12, 14, 25, 27, 34 [Pl.'s Rule 7.1 Response].)  Where this occurs, the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Plaintiff provides in her responses. *See CA, Inc. v. New Relic, Inc.*, 12-CV-

5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) (holding that "the Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed'"); *Washington v. City of New York*, 05-CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) (holding that "the statement provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is 'Admit'"); *cf. Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").  To the extent that Plaintiff desired to set forth additional material facts that she contends are in dispute, she was required by Local Rule 7.1(a)(3) to do so in separately numbered paragraphs.  *Johnson v. City of Troy*, 14-CV-0817, 2016 WL 5107124, at *8 n.12 (N.D.N.Y. Sept. 20, 2016) (Suddaby, C.J.).

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts ("Rule 7.1 Statement") and expressly admitted by Plaintiff in her response thereto ("Rule 7.1 Response").  (*Compare* Dkt. No. 55, Attach. 2 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 70, Attach. 2 [Pl.'s Rule 7.1 Response].)

1.      In a letter dated December 19, 2012, Plaintiff received confirmation of her appointment, effective October 25, 2012, to the position of Labor Services Representative Trainee 1 with the NYSDOL in Amsterdam, New York.

2.      Plaintiff's immediate supervisor during her employment at the NYSDOL was Elizabeth Mack.  However, when Ms. Mack was out during a maternity leave, Christina Strubel served as Plaintiff's immediate supervisor until Ms. Mack returned to work on January 9, 2014.

3.      Plaintiff's second-level supervisor during her employment at the NYSDOL was Susan Dufel.

4.      Ms. Dufel hired Plaintiff.

5.      Plaintiff sent Ms. Dufel a resignation letter dated December 31, 2013, in which she indicated that she wanted to resign effective January 14, 2014.

6.      In her resignation letter, Plaintiff stated that "[m]y working circumstances have deteriorated to the point that it is discouraging and confusing to attempt to do my job."

7.      However, Plaintiff also stated that "I do not know why it is that I am being treated in this way but regardless of the reasons, it is clear that I am being singled out in the way I am treated."

8.      Nowhere in Plaintiff's resignation letter does she allege that she is being discriminated against based on her race or that she feels she is being retaliated against for complaining about discrimination.

9.      Nowhere in Plaintiff's resignation letter does she allege that other minority co-workers are being discriminated against based on their race or are being retaliated against for any reason.

-5-

10.     In a letter dated January 13, 2014, Plaintiff rescinded her December 31, 2013, resignation letter.

11.     Plaintiff's letter dated January 13, 2014, states that "I would appreciate the opportunity to continue working with the organization, and I apologize for any inconveniences that my resignation may have caused, as I look forward to my continued positive contributions to my place of work."

12.     Plaintiff made no mention in her January 13, 2014, letter of any complaints of, or concerns about, a hostile work environment, discrimination, or retaliation.

13.     Plaintiff's co-worker, Ralph Grugnale, who served as a disabled veteran's outreach representative, never observed a difference in the way that Susan Dufel interacted with people of color versus "Caucasian or European American" people.[1]

14.     The "SMART" program was a program that the NYSDOL deployed to match a customer's résumé with jobs that were available on the New York State Job Bank.

15.     Effective January 22, 2014, Plaintiff advanced to the title of hourly Labor Services Representative Trainee 2 after satisfactorily completing one year as a Labor Services Representative Trainee 1.

---

[1]     (*Compare* Dkt. No. 55, Attach. 2, ¶ 13 [Def.'s Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 70, Attach. 2, ¶ 13 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)  Specifically, Plaintiff cites a document containing a statement by Mr. Grugnale, which Plaintiff argues contradicts the above-stated fact.  However, Mr. Grugnale's statement references "other staff" only and does not specify, or make any reference to, people of color versus "Caucasian or European American" people.

16.    Plaintiff was informed by an e-mail message dated March 27, 2014, that the Family Medical Leave Act ("FMLA") form that she submitted to Associate Personnel Administrator Carole Brunner was an outdated version of the form, and that she needed to have her doctor fill out a form that was attached to the e-mail message.[2]

17.    However, Ms. Brunner never sent Plaintiff a letter formally denying Plaintiff's FMLA request.[3]

18.    In fact, despite Plaintiff's initial failure to submit the correct FMLA form, Ms. Brunner, by letter dated March 27, 2014, approved Plaintiff's request for FMLA for the time period of March 18, 2014, through May 20, 2014.[4]

19.    Plaintiff received a letter dated April 11, 2014, from Director of Personnel Carol Owsiany, indicating that federal funding for several programs run by the NYSDOL was cut by Congress.  As a result, the NYSDOL was forced to reduce the number of work hours for some non-permanent hourly staff, whose positions were funded by those programs.

---

[2]    (*Compare* Dkt. No. 55, Attach. 2, ¶ 17 [Def.'s Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 70, Attach. 2, ¶ 17 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)

[3]    (*Compare* Dkt. No. 55, Attach. 2, ¶ 18 [Def.'s Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 70, Attach. 2, ¶ 18 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)  Specifically, the e-mail message that Plaintiff cites in support of her denial contains a request from Ms. Brunner that Plaintiff submit an updated FMLA form but does not state that her FMLA request has been denied.

[4]    (*Compare* Dkt. No. 55, Attach. 2, ¶ 19 [Def.'s Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 70, Attach. 2, ¶ 19 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)  Specifically, Defendant's Exhibit "N" (Dkt. No. 57, Attach. 6) contains the letter referenced in the above-stated fact.

20.     Ms. Owsiany's letter further indicated that Plaintiff's work hours would be reduced by 50%, effective May 15, 2014, but that she had been assigned to a shared work program that may allow her to collect partial unemployment insurance benefits.

21.     An e-mail dated November 3, 2014, to counsel for the NYSDOL, explains that it was determined that three staff members in the Amsterdam Office would need to be reduced to part-time work at 50%.

22.     Because all employees at the Amsterdam Office performed satisfactorily during the last quarter, designations for shared work were made based on the date of hire.

23.     Plaintiff was chosen for the shared work program because she was the employee with the least seniority.

24.     However, Plaintiff left her employment at the NYSDOL before her work hours were reduced by 50%.

25.     Indeed, in a letter dated April 23, 2014, Plaintiff resigned from her position of Labor Services Representative-Trainee, indicating that her last day of work would be on May 7, 2014.

26.     In her resignation letter, Plaintiff made no mention of any complaints of, or concerns about, a hostile work environment, discrimination, or retaliation.

27.     In fact, Plaintiff's resignation letter states that "I would like to thank you for having me as a part of your team.  I appreciate the time and patience you have shown in training me.  Please acknowledge this letter of resignation and I wish you (and the team) every success in the future."

28.    Plaintiff was never formally disciplined for any reason while employed by the NYSDOL.[5]

29.    Plaintiff received employment performance evaluations during her employment with the NYSDOL.

30.    Nothing changed with respect to the conditions of Plaintiff's employment as a result of her performance evaluations.

31.    After she resigned, Plaintiff submitted a Charge of Discrimination to the New York State Division of Human Rights ("DHR"), dated August 11, 2014, alleging discrimination based on her race, retaliation and constructive discharge.

32.    Plaintiff submitted a complaint to the NYSDOL's Division of Equal Opportunity Development ("DEOD"), alleging that she was discriminated and retaliated against based on her race by Susan Dufel.

33.    A letter was sent to Plaintiff from an attorney from the Department of Labor explaining that an investigation was conducted with respect to Plaintiff's complaint that was filed with the DEOD and that a finding of no probable cause was made but that administrative action was recommended.

34.    On December 12, 2014, the EEOC sent Plaintiff a right-to-sue letter indicating that "the Commission is unable to conclude that the information establishes a violation of Federal law on the part of the Respondent."

_____

[5]    (*Compare* Dkt. No. 55, Attach. 2, ¶ 29 [Def.'s Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 70, Attach. 2, ¶ 29 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)

**C.    The Parties' Briefing of Defendant's Motion**

**1.    Defendant's Memorandum of Law**

Generally, liberally construed, Defendant's motion asserts the following five arguments. (Dkt. No. 55, Attach. 1 [Def.'s Mem. of Law].)

First, Defendant argues that any acts of discrimination that occurred before October 16, 2013, are time-barred by the statute of limitations governing Title VII claims. (*Id.* at 7-9.)[6]

Second, Defendant argues that Plaintiff has failed to establish that she suffered an adverse employment action under circumstances giving rise to an inference of discrimination, which is necessary to demonstrate a *prima facie* discrimination claim. (*Id.* at 9-10.) Specifically, Defendant argues that Plaintiff did not suffer an adverse employment action for the following six reasons: (a) Plaintiff received "outstanding" or "satisfactory" scores on the majority of the criteria in her performance evaluations and, in any event, the terms or conditions of her employment were not adversely effected as a result of any performance evaluation; (b) even if Plaintiff's work was more closely monitored and/or scrutinized by her supervisors, the terms or conditions of her employment were not altered and any embarrassment or humiliation she may have suffered from verbal reprimands is insufficient to establish an adverse employment action; (c) Plaintiff has failed to demonstrate that her work environment was so intolerable that she was forced to resign from her position involuntarily or that any such work conditions were deliberately created because of her race; (d) the shared-work program cannot constitute an adverse employment action because Plaintiff was selected for that program on the basis that she

---

[6]    Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties respective motion papers.

was the employee with the least seniority and, in any event, she resigned her position before her work hours were reduced; (e) any workplace policies or rules that Plaintiff alleges had an adverse impact on her and were meant to single her out for penalties lacks merit because Plaintiff has failed to submit any evidence that she was subjected to any penalties that qualify as adverse employment actions and, in any event, any changes to workplace policies applied to all employees and not just to Plaintiff; and (f) Plaintiff's request for leave pursuant to the FMLA was never denied (and was in fact approved) and therefore cannot serve as the basis for an adverse employment action. (*Id.* at 10-18.)

In addition, Defendant argues that, even if Plaintiff suffered an adverse employment action, she has failed to demonstrate that any of the alleged acts complained of occurred under circumstances giving rise to an inference of discrimination because (a) Ms. Dufel, who Plaintiff alleges was the one who primarily discriminated against her, was the individual who hired Plaintiff, and (b) Plaintiff has made only bald, conclusory assertions that the complained of acts occurred due to her protected status. (*Id.* at 18-19.) Moreover, Defendant argues that, even if Plaintiff has established a *prima facie* discrimination claim, it had legitimate, non-discriminatory reasons for its actions because (a) Plaintiff was never disciplined while she was employed at NYSDOL, (b) any performance evaluations that can arguably be perceived as negative were supported by Plaintiff's performance, and (c) any micro-managing or criticism of Plaintiff's work had nothing to do with her race but with Ms. Dufel's management style. (*Id.* at 19.)

Third, Defendant argues that Plaintiff's disparate treatment claim must fail because she has failed to identify any employee outside of her protected group, let alone how he or she was similarly situated. (*Id.* at 20.) Rather, Defendant argues that Plaintiff generally contends that

"Caucasian co-workers" were not subjected to the same scrutiny as she was and did not have to follow the policies and procedures of the office as closely as she did.  (*Id.* at 20-21.)  Similarly, Defendant argues that Plaintiff has failed to demonstrate that any employee of the NYSDOL acted with discriminatory intent or motive towards her.  (*Id.* at 20-23.)

Fourth, Defendant argues that Plaintiff's hostile work environment claim must be dismissed for the following four reasons: (a) Plaintiff has failed to demonstrate that her work environment was permeated with discriminatory intimidation and ridicule that was sufficiently severe or pervasive to alter the terms or conditions of her employment; (b) there is no evidence that the alleged actions taken by Ms. Dufel (including allegedly yelling at Plaintiff in the presence of other employees, reprimanding her, and micro-managing Plaintiff's work) affected Plaintiff's future employment in any way; (c) although Plaintiff has submitted evidence that a co-worker informed her that two other employees had referred to Plaintiff's traditional clothing as "jungle dress," this information was given to Plaintiff second-hand, it took place at an unknown date and time, and it is insufficient to establish a hostile work environment claim; and (d) although Plaintiff initially resigned from her position by letter dated December 31, 2012, Plaintiff withdrew her resignation letter a week later and asked to have her job back, thereby demonstrating that the alleged discriminatory actions and insults that she endured were not sufficiently severe.  (*Id.* at 23-27.)

Fifth, and finally, Defendant argues that Plaintiff's retaliation claims under Title VII and the First Amendment must be dismissed for the following four reasons: (a) Plaintiff has failed to submit evidence of any actions that were taken against her after she filed a complaint with the DEOD; (b) even if Plaintiff could establish that she suffered from an adverse employment action

as a result of engaging in a protected activity, she cannot offer any evidence demonstrating a causal connection between the alleged protected activity and the adverse action; (c) with regard to her First Amendment retaliation claim, Plaintiff cannot demonstrate that she engaged in constitutionally protected speech because, when she expressed her concerns regarding potential violations of the Health Insurance Portability and Accountability Act ("HIPAA") by providing customer information to set up e-mail alerts for the SMART program, she was engaging in speech pursuant to her official duties as an employee of the NYSDOL and not as a citizen on a matter of public concern; and (d) in any event, Plaintiff has admitted that she was never disciplined in any way for anything that she said.  (*Id.* at 27-31.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, liberally construed, Plaintiff asserts the following three arguments in opposition to Defendant's motion.  (Dkt. No. 70, Attach. 1 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that her claims are not time-barred by the applicable statute of limitations because she has demonstrated that she was subjected to an ongoing discriminatory practice or policy, warranting application of the continuing-violation doctrine.  (*Id.* at 2-3.)

Second, Plaintiff argues that her discrimination claim under Title VII should not be dismissed because she has submitted admissible record evidence demonstrating that (a) different evaluation standards were applied to her and changed capriciously when it supported Ms. Dufel's actions, (b) documentation was prepared to insulate Defendant from liability, (c) Ms. Dufel was the one who completed Plaintiff's evaluation while Ms. Mack was out on maternity leave, and (d) Plaintiff's resignation letter thanked Ms. Mack, and not Ms. Dufel, for her patience while training Plaintiff.  (*Id.* at 6-7.)

-13-

Third, and finally, Plaintiff argues that she has created a genuine dispute of material fact regarding whether a hostile work environment existed at the NYSDOL for the following four reasons: (a) co-workers felt comfortable referring to Plaintiff's clothing as "jungle dress" and referring to her smile as a "Camel smile," which was ignored by Ms. Mack when these incidents were reported to her; (b) Plaintiff was disciplined on numerous occasions in front of other co-workers; (c) Plaintiff was excluded from the daily morning ritual of greeting co-workers with "good morning" to the extent that her exclusion was noticed by other co-workers; and (d) it became regular practice to look for mistakes in Plaintiff's work to justify the imposition of discipline.  (*Id.* at 3-4, 6-7, 10.)

### 3.    Defendant's Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendant makes the following four arguments.  (Dkt. No. 74 [Def.'s Reply Mem. of Law].)

First, Defendant reiterates its argument that, because the continuing-violation doctrine does not apply to Plaintiff's claims, any claims that accrued before October 16, 2013, are time-barred.  (*Id.* at 6-7.)

Second, Defendant argues that, because Plaintiff has failed to oppose its arguments regarding her failure to establish a *prima facie* discrimination claim, under this Court's Local Rules Defendant must show only that its arguments possess facial merit to be successful.  (*Id.* at 7-8.)  In any event, Defendant argues that it has set forth legitimate, nondiscriminatory reasons for the acts Plaintiff claims were discriminatory.  (*Id.* at 8.)

With respect to Plaintiff's disparate treatment claim, Defendant argues that Plaintiff has failed to identify any employee outside of her protected group who was similarly situated to her

or demonstrate that other employees of her race were subjected to similar acts while Caucasian

employees were treated more favorably.  (*Id.* at 9.)  Defendant further argues that Plaintiff has

failed to demonstrate that she suffered an adverse employment action and that she has admitted

that nothing changed with respect to the conditions of her employment as a result of her

performance evaluations.  (*Id.* at 10.)  Similarly, Defendant argues that Plaintiff has not provided

any evidence that her supervisors acted with a discriminatory intent or motive.  (*Id.* at 10-11.)

Third, with respect to Plaintiff's hostile work environment claim, Defendant argues that

Plaintiff has injected the following two new claims through her opposition memorandum of law:

(a) that she was discriminated against on the basis of her national origin; and (b) that co-workers

referred to her smile as a "Camel smile."  (*Id.* at 11-12.)  With respect to Plaintiff's claim based

on national origin, Defendant argues that she never indicated in her complaint to the DHR that

she was alleging any discrimination based on her national origin.  (*Id.* at 11.)  Indeed, Defendant

argues that the "national origin" box on the DHR complaint was left unchecked.  (*Id.*)

Furthermore, Defendant argues that a national origin claim cannot be considered because

Plaintiff failed to administratively exhaust any such claim.  (*Id.* at 12.)  Similarly, Defendant

argues that any claim that co-workers referred to Plaintiff's smile as a "Camel smile" has never

been made previously, despite ample opportunity for Plaintiff to make this claim in her

Complaint, in discovery responses, and during her deposition.  (*Id.*)

With respect to the remaining portions of Plaintiff's hostile work environment claim,

Defendant argues that Plaintiff has failed to demonstrate that the incidents that she alleges

created a hostile work environment were severe and pervasive or that they amounted to a change

in the terms and conditions of her employment.  (*Id.* at 13-14.)

Fourth, and finally, Defendant argues that Plaintiff has failed to oppose its arguments regarding dismissal of her retaliation claims. (*Id.* at 14.) Therefore, Defendant argues that, because it has met its modest burden in support of dismissal, Plaintiff's retaliation claims must be dismissed. (*Id.*)

## II.    LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[7]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

---

[7]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[8]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[9]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[10]  Of course, when a non-movant fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has failed to properly respond to that

---

[8]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[9]     *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[10]     *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

statement,[11]–even where the non-movant was proceeding *pro se*.[12]

Similarly, in this District, where a non-movant has failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[13]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[11]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[12]    *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

[13]    *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

III.    ANALYSIS

    A.    **Whether any of Plaintiff's Claims Arising Before October 16, 2013, Are Barred by the Applicable Statute of Limitations**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth below.

"A plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e-5(e)(1)." *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 663 (E.D.N.Y. 2015) (internal quotation marks omitted). "Under that provision, where the claimant has already filed the charge with a state or local equal employment agency, the claimant must bring the Title VII claim within 300 days of the alleged discriminatory action." *Edner*, 134 F. Supp. 3d at 663 (internal quotation marks omitted). "This 300-day time period acts as a statute of limitations and claims arising from acts that occurred more than 300 days prior to the employee's filing of a charge of discrimination with the EEOC are time-barred." *Id.*

Here, Defendant argues, and Plaintiff does not dispute, that Plaintiff filed her charge of discrimination with the New York State DHR on August 11, 2014, which was automatically sent to the EEOC for dual filing purposes and received by the EEOC on August 14, 2014. Defendant therefore argues that all of Plaintiff's claims arising before October 16, 2013, are untimely. Plaintiff relies on the continuing-violation doctrine in support of her position that her claims are timely. Pursuant to the continuing-violation doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Fouche v. St. Charles Hosp.*, 43 F. Supp. 3d 206, 213

(E.D.N.Y. 2014) (internal quotation marks omitted).  "Thus, in other words, this exception

applies for claims that the discriminatory acts were part of a continuing policy and practice of

prohibited discrimination . . . so long as one act of discrimination in furtherance of the ongoing

policy occurred within the limitations period."  *Fouche*, 43 F. Supp. 3d at 213 (internal quotation

marks omitted).  "On the other hand, discrete acts do not fall within the exception and each

discrete act starts a new clock for filing charges alleging that act."  *Id.*

"As a general rule, courts in the Second Circuit have viewed continuing violation

arguments with disfavor." *De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 407

(E.D.N.Y. 2013) (internal quotation marks omitted), *aff'd*, 552 F. App'x 98 (2d Cir. 2014).

Thus, only "compelling circumstances will warrant the application of the exception to the statute

of limitations." *De La Peña*, 953 F. Supp. 2d at 407.

In the present case, Defendant has shown that some of the alleged discriminatory acts

took place before October 16, 2013.  Moreover, Plaintiff, in her opposition memorandum of law,

failed to include any dates in support of her argument that certain acts should be considered

timely as part of a discriminatory policy or practice at the NYSDOL.  (Dkt. No. 70, Attach. 1, at

3-4 [Pl.'s Opp'n Mem. of Law].)  In any event, the Court finds that, to the extent Plaintiff relies

on Defendant's various alleged reprimands or negative performance reviews, these are discrete

acts and Plaintiff fails to demonstrate that these acts were in furtherance of a discriminatory

policy or practice of discriminating against African-American employees.  *See Lambert v.*

*Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (holding that "multiple incidents of discrimination,

even similar ones, that are not the result of a discriminatory policy or mechanism do not amount

to a continuing violation"); *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d

1397, 1404 (2d Cir. 1993) (stating that "continuous violation exception applies only where discrimination is accomplished through a specific official policy or mechanism"); *Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (affirming the district court's finding that the plaintiff's negative evaluations and disciplinary proceedings were only discrete acts that did not trigger the continuing violation exception); *Edner v. NYCTA-MTA*, 134 F. Supp. 3d 657, 664 (E.D.N.Y. 2015) ("Such discrete acts include termination, disparate disciplining, and negative performance evaluations.") (collecting cases).

Although the Court finds that the continuing-violation doctrine does not apply to a portion of Plaintiff's claims, the Court would still dismiss that portion of Plaintiff's claims, along with the remaining portion of Plaintiff's claims, for the reasons set forth below.

**B.    Whether Plaintiff's Discrimination Claims Under Title VII Must Be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant in its memoranda of law.  (Dkt. No. 55, Attach. 1, at 9-23 [Def.'s Mem. of Law]; Dkt. No. 74, at 7-11 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

Plaintiff's "Title VII discrimination claim is governed by *McDonnell Douglas*." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 19-20 (2d Cir. 2015) (citing *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 73-74 [2d Cir. 2015]). "Under the *McDonnell Douglas* framework, [the plaintiff] bears the burden of establishing a prima facie case of discrimination by showing (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Tolbert v.*

*Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (internal quotation marks omitted). As discussed above in Part I.C.1. of this Decision and Order, Defendant concedes that Plaintiff has satisfied the first two elements of this test. Therefore, the Court will focus its analysis on the third and fourth elements.

### 1.    Whether Plaintiff Suffered an Adverse Employment Action

"In this circuit, an adverse employment action is a 'materially adverse change in the terms and conditions of employment.'" *Islamic Soc'y of Fire Dep't Pers. v. City of N.Y.*, 205 F. Supp. 2d 75, 83 (E.D.N.Y. 2002) (quoting *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 85 [2d Cir. 2001]). Although "[t]he employment action need not involve job termination or a reduction in wages, . . . 'not every unpleasant matter short of [discharge or demotion] creates a cause of action.'" *Islamic Soc'y*, 205 F. Supp. 2d at 83 (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 [2d Cir. 1999]); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (noting that an adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities"). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

In this regard, "[t]here are no 'bright-line rules' for determining whether an employee has suffered an adverse employment action," and so courts are required to "'pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Islamic Soc'y*, 205 F. Supp. 2d at 83 (quoting *Richardson*, 180 F.3d at 446). However, courts in this Circuit have come to agree that certain employment actions will almost always constitute an adverse employment action. For example, the Second Circuit has noted that, for purposes of

Title VII, an adverse employment action generally includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Terry*, 336 F.3d at 138.  Conversely, "[c]riticism of an employee in the course of evaluating and correcting her work is not, in itself, a materially adverse employment action." *Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 642 (W.D.N.Y. 2014) (internal quotation marks omitted).  Nor is "[a] negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss," considered an adverse employment action.  *Browne v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 333-34 (E.D.N.Y. 2005) (citations omitted).

In the present case, Plaintiff has failed to oppose the majority of Defendant's arguments regarding whether she suffered an adverse employment action.  (*Compare* Dkt. No. 55, Attach. 1, at 10-18 [Def.'s Mem. of Law] *with* Dkt. No. 70, Attach. 1, at 4-11 [Pl.'s Opp'n Mem. of Law].)  As discussed above in Part II of this Decision and Order, in this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  Compliance with the Court's Local Rules applies to *pro se* litigants as well as represented litigants.[14]  The Court finds that, at the very least, Defendant has met that modest threshold burden.  In any event, the Court would grant this portion of

---

[14]     The docket reflects that, on March 13, 2015, a copy of the Northern District's *Pro Se* Handbook was issued and explained to Plaintiff, which contains a notice of the consequences of failing to properly oppose a motion for summary judgment.  (Dkt. No. 3.)

Defendant's motion even if it were to subject it to the more-rigorous scrutiny appropriate for a contested motion, once again, for the reasons stated in Defendant's memoranda of law.

Indeed, the record demonstrates that Plaintiff has admitted at various points during this litigation that she did not suffer any changes to the terms or conditions of her employment as a result of the alleged discriminatory actions. For example, Plaintiff testified as follows at her deposition:

> Q:      So did anything happen to you as a result of your performance evaluations, as far as anything change as far as your job duties go or were you given less money or anything like that?
>
> A:      No. No opportunity yet.

(Dkt. No. 55, Attach. 1, at 62:10-15 [Pl.'s Dep. Tr.].) When asked about being verbally reprimanded, Plaintiff testified as follows.

> Q:      So the instances we just discussed in September and then from October to November 2013, you weren't actually disciplined in any way, per se, you were spoken to about certain issues like documentation and dealing with someone else's client, correct?
>
> A:      Yes. Not yet.

(*Id.* at 64:23-65:6.) Similarly, when Ms. Dufel spoke to Plaintiff about other problems she identified with Plaintiff's work, Plaintiff admitted that she was not formally disciplined:

> Q:      Now, those two instances that you just spoke about, were you disciplined in any way as a result of those instances?
>
> A:      I did not have, in relationship to how you spoke of disciplining, no. But like I said, it was put on my evaluation, you know, in terms of me not scheduling people correctly and things of that nature.

(*Id.* at 60:14-21.)

As noted above, criticism of an employee or negative evaluations, in and of themselves, do not constitute adverse employment actions. "Nor will close monitoring by a supervisor or excessive scrutiny constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 226 (E.D.N.Y. 2016) (internal quotation marks omitted); *see also Cunningham v. New York State Dep't of Labor*, 326 F. App'x 617, 619 (2d Cir. 2009) ("As we have previously held, everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII.").[15]  Accordingly, the Court finds that Plaintiff has failed to create a genuine dispute of material fact as to whether she suffered an adverse employment action.

### 2.    Whether the Acts Complained of Occurred Under Circumstances Giving Rise to an Inference of Discrimination

Although the Court has found that Plaintiff has failed to create a genuine dispute of material fact with regard to the third element of a *prima facie* discrimination claim under the *McDonnell-Douglas* framework, the Court will analyze the fourth element for the sake of

---

[15]    The Court notes that Plaintiff argues that she heard other co-workers refer to her clothes as "jungle dress" and refer to her smile as a "Camel smile." (Dkt. No. 70, Attach. 1, at 7 [Pl.'s Opp'n Mem. of Law].)  This argument will be addressed in greater detail below in Part III.C. of this Decision and Order; however, the Court notes that these comments–while racially insensitive and thus deplorable–do not constitute an adverse employment action. *See Davis v. NYS Dep't of Corr. Attica Corr. Facility*, 46 F. Supp. 3d 226, 235 (W.D.N.Y. 2014) ("With respect to Plaintiff's claim that Ms. Post made a racially insensitive comment and that Mr. Whiteford agreed, verbal abuse is typically insufficient to constitute an 'adverse employment action' because negative or otherwise insulting statements are hardly even actions, let alone 'adverse actions.'") (internal quotation marks omitted); *Teachout v. N.Y.C. Dep't. of Educ.*, 04-CV-0945, 2006 WL 452022, at *13 (S.D.N.Y. Feb. 22, 2006) ("Negative comments . . . are not, standing alone, adverse employment actions, because mere comments do not materially affect employment."); *Boyd v. Presbyterian Hosp. in City of N.Y.*, 160 F. Supp. 2d 522, 537 (S.D.N.Y. 2001) ("The 'gossips' Plaintiff cites likewise are not adverse employment actions.").

completeness.  In her opposition memorandum of law, Plaintiff primarily argues that she was subjected to disparate treatment while employed by the NYSDOL.  (Dkt. No. 70, Attach. 1, at 4-7 [Pl.'s Opp'n Mem. of Law].)  "'A showing of disparate treatment–that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group–is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case.'"  *Seale v. Madison Cty.*, 929 F. Supp. 2d 51, 67 (N.D.N.Y. 2013) (Suddaby, J.) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 [2d Cir. 2003]).  "If a comparison with another employee is to lead to an inference of discrimination it is necessary that the employee be similarly situated in all material respects."  *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014) (internal quotation marks omitted).

> What constitutes 'all material respects' . . . must be judged based on (1) whether the plaintiff and those [she] maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. . . . Hence the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than showing that both cases are identical.

*Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citations omitted).

Here, Defendant correctly points out that Plaintiff has failed to identify, with any specificity, an employee outside of her protected group or how that employee was similarly situated to her.  (Dkt. No. 55, Attach. 1, at 20-21 [Def.'s Mem. of Law].)  Indeed, Plaintiff's opposition memorandum of law is devoid of any references to co-workers who are outside of her protected group.  Although her Amended Complaint alleges that "Defendant held Plaintiff to different work standards than [the standard governing] Plaintiff's Caucasian counterparts" and that Plaintiff was reprimanded "for a Caucasian co-worker's clients[,]" these allegations are

bereft of detail.  Under these circumstances, and for the additional reasons offered by Defendant in its memoranda of law (Dkt. No. 55, Attach. 1, at 20-23 [Def.'s Mem. of Law]; Dkt. No. 74, at 8-11 [Def.'s Reply Mem. of Law]), the Court finds that Plaintiff has failed to create a genuine dispute of material fact as to whether the acts she has complained of occurred under circumstances giving rise to an inference of discrimination.  *See Blige v. City Univ. of New York*, 15-CV-8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants.") (internal quotation marks omitted); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (holding that plaintiff's allegation that "a non-Haitian employee could 'borrow' vacation days, while Plaintiff could not" did not give rise to an inference of discrimination where plaintiff did not allege any facts about the non-Haitian colleague, such as whether they worked in the same department or had the same job responsibilities or supervisors).

### C.    Whether Plaintiff's Hostile Work Environment Claim Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant in its memoranda of law.  (Dkt. No. 55, Attach. 1, at 20-27 [Def.'s Mem. of Law]; Dkt. No. 74, at 11-14 [Def.'s Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

To establish a hostile work environment claim, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015) (internal quotation

marks omitted).  "This standard has both objective and subjective components: the conduct

complained of must be severe or pervasive enough that a reasonable person would find it hostile

or abusive, and the victim must subjectively perceive the work environment to be abusive."

*Littlejohn*, 795 F.3d at 321.  "As a general rule, incidents must be more than 'episodic'; they

must be sufficiently continuous and concerted in order to be deemed pervasive." *Tolbert v.*

*Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (citation omitted).  Thus, "a plaintiff alleging a hostile

work environment must demonstrate either that a single incident was extraordinarily severe, or

that a series of incidents were sufficiently continuous and concerted to have altered the

conditions of her working environment."  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)

(internal quotation marks omitted).  However, "the fact that the law requires harassment to be

severe or pervasive before it can be actionable does not mean that employers are free from

liability in all but the most egregious cases." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)

(internal quotation marks omitted).  "Where reasonable jurors could disagree as to whether

alleged incidents would have adversely altered the working conditions of a reasonable employee,

the issue of whether a hostile work environment existed may not properly be decided as a matter

of law." *Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 512 (S.D.N.Y. 2010).  Finally, "[i]t

is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a

protected characteristic."  *Tolbert*, 790 F.3d at 439.

      Here, Plaintiff argues that she was subjected to a hostile work environment because (a)

she was "disciplined on numerous occasions in front of other co-workers," (b) she was

"regularly overlooked [during the] morning ritual of wishing co-workers good morning to such the extent that other co-workers began pointing out the obvious exclusion of Plaintiff in the ritual," (c) her supervisors undertook "the regular practice of looking for mistakes in Plaintiff's work that could be disciplined," (d) her supervisors "enlist[ed] the aid of others to cover up and hide behind behaviors when it would become apparent that [Plaintiff] may be disciplined," and (e) her "co-worker's [felt] comfortable in the work environment to refer to Plaintiff's clothing as 'jungle dress'" and refer to her smile as a "Camel smile." (Dkt. No. 70, Attach. 1, at 3-4, 7, 11 [Pl.'s Opp'n Mem. of Law].)

As an initial matter, the Court has already found that criticism of an employee, negative evaluations, and close supervision do not constitute adverse employment actions where, as here, Plaintiff did not suffer any materially adverse changes to the terms and conditions of her employment. Perhaps most importantly, Plaintiff has failed to demonstrate, for the reasons discussed above in Part III.B.2. of this Decision and Order, that any of these alleged actions were taken *because of* her race. With respect to Plaintiff's argument that she was "regularly overlooked [during the] morning ritual of wishing co-workers good morning," it is axiomatic that Title VII is not a general civility code. *See Cromwell-Gibbs v. Staybridge Suite Times Square*, 16-CV-5169, 2017 WL 2684063, at *7 (S.D.N.Y. June 20, 2017) ("As for the fact that Chiew stopped saying 'good morning' and 'good evening' to Plaintiff, it is axiomatic that Title VII is not a 'general civility code.'"). In any event, Plaintiff admitted during her deposition that Ms. Dufel also excluded a Caucasian employee named Ralph Grugnale from her "good morning" routine because they had a contentious relationship. (Dkt. No. 56, Attach. 3, at 72:8-22 [Pl.'s Dep. Tr.].)

-29-

Finally, Plaintiff's argument that co-workers referred to her clothes as "jungle dress" and to her smile as a "Camel smile" certainly carry overtones of racial animus.  However, Plaintiff has failed to cite admissible record evidence in support of her contention that she "often times" heard co-workers refer to her clothes as "jungle dress."  Rather, Defendant correctly argues (Dkt. No. 74, at 12 [Def.'s Reply Mem. of Law]) that Plaintiff's deposition testimony establishes that she heard this reference only once and it was communicated to her by a co-worker who had overheard the reference during a conversation between other employees.  (Dkt. No. 56, Attach. 3, at 33:11-35:14 [Pl.'s Dep. Tr.].)  Moreover, Defendant argues that Plaintiff has asserted, for the first time in this litigation, that she has overheard co-workers referring to her smile as a "Camel smile."  Indeed, Plaintiff has not provided a citation to admissible record evidence in support of this contention nor has the Court been able to find any evidence of these references in the record.  In any event, even assuming that these allegations are true, Plaintiff has failed to demonstrate that these references, while deplorable, were severe or pervasive to establish a hostile work environment.  *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.") (alteration and internal quotation marks omitted); *Saqib v. Stein deVisser & Mintz, PC*, 09-CV-4624, 2010 WL 2382253, at *1 (2d Cir. June 15, 2010) ("Even if the allegation that a co-worker commented that Saqib 'looked like a terrorist' when he wore an overcoat to work in warm weather were construed to evidence some proscribed bias . . .  it would be insufficient to state a *prima facie* discrimination claim."); *Daniel v. T & M Prot. Res. LLC*, 87 F. Supp. 3d 621, 627, 635-36

(S.D.N.Y. 2015) (finding that a supervisor's use of explicit racial epitaphs during a

"profanity-laced tirade," although "reprehensible," was not sufficiently severe to survive

summary judgment on hostile work environment claim); *Davis v. NYS Dep't of Corr. Attica

Corr. Facility*, 46 F. Supp. 3d 226, 236 (W.D.N.Y. 2014) ("Whispering, gossiping, and making

negative comments about an employee also do not rise to the level of an adverse employment

action because they do not materially change the terms and conditions of employment.").

Accordingly, for all of the foregoing reasons, Plaintiff's hostile work environment claim

is dismissed.

### D.    Whether Plaintiff's Retaliation Claims Must Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated by Defendant in its memoranda of law.  (Dkt. No. 55, Attach. 1, at 27-31

[Def.'s Mem. of Law]; Dkt. No. 74, at 14 [Def.'s Reply Mem. of Law].)  To those reasons, the

Court adds only that Plaintiff has failed to oppose Defendant's motion with respect to these

claims.  Therefore, as discussed above in Part II of this Decision and Order, Defendant need only

show that its arguments possess facial merit.  The Court finds that Defendant has met this modest

burden and would grant this aspect of Defendant's motion even if it subjected it to the more

rigorous scrutiny appropriate for a contested motion, once again, for the reasons offered by

Defendant.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 55) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 7) is **DISMISSED**.

The Clerk of the Court is directed to enter judgment in favor of Defendant and close this

case.

Dated: November 29, 2017
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge